1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF WASHINGTON

7
8    PACIFIC AEROSPACE &
     ELECTRONICS, INC., a                   NO.  CV-05-0155-AAM
     Washington corporation,
9                                           **ORDER GRANTING
                                            MOTION TO DISMISS**
           Plaintiff,
10
11         v.
12   SRI HERMETICS, INC.,
13         Defendant.

14         **BEFORE THE COURT** is the Defendant's Motion To Dismiss For Lack

15   Of Personal Jurisdiction (Ct. Rec. 4).  This motion is heard without oral argument.

16
17                              BACKGROUND

18         Plaintiff filed its complaint on March 25, 2005, alleging that Defendant is

19   selling and offering for sale products that are covered by patents owned by

20   Plaintiff.  Plaintiff's principal place of business is Wenatchee, Washington.

21   According to Plaintiff, it is "an industry leader in the design, engineering,

22   integration, and assembly of the most advanced hermetic connector and packaging

23   technologies available on the market."  Plaintiff's connectors and packaging

24   technologies are used in a variety of commercial and defense related applications,

25   including the aerospace industry.

26   / / /

27   **ORDER GRANTING
28   MOTION TO DISMISS-**            1

1   Defendant SRI Hermetics, Inc. (SRIH) is a Florida company that was
2   incorporated in December 2003.  It states that its sole place of business is in
3   Florida.  Prior to incorporation, however, Defendant established an office in
4   Wenatchee, Washington when it hired Ed Taylor and Jim Petri in late 2003.  SRIH
5   was created as an adjunct to Summation Research ("SRI") and SRI Connector
6   Gage Company ("SRICG"), which are companies that design, develop,
7   manufacture, and sell electronics equipment to the Department of Defense and
8   aerospace companies, as well as some commercial accounts.

9   In addition to hiring Mr. Taylor, SRIH also purchased equipment from
10  RAAD Technologies, Ed Taylor, Jim Petri, and from various banks from which
11  RAAD Technologies had leased equipment.  The equipment included a laser
12  welding system, an infrared belt furnace, miscellaneous chemicals, office furniture,
13  kilns, microscopes, and computers that had been erased prior to SRI acquiring
14  them.  SRIH also reimbursed Mr. Taylor for the use of the space he previously
15  leased under his company's name, Hermetic Design Concepts.

16  According to Defendant, it never intended to establish business operations in
17  Washington, and did not seek a Washington State business license.  It intended to
18  accumulate the equipment in Washington and move it to Florida as soon as the
19  weather and the convenience of Defendant's employees would allow.

20  In June, 2004, Defendant moved all of its equipment that was located in
21  Washington to Florida.  Mr. Taylor and Mr. Petri also relocated at the same time.
22  Defendant maintains that between December, 2004 and June, 2004, it directed all
23  business activities from Florida, with the exception of a small amount of welding
24  which was performed in Washington.  For the ten welding projects that were
25  completed in Washington, the parts were shipped from Florida to Washington, and
26  then the finished product was shipped back to Florida.

27
28  **ORDER GRANTING**
    **MOTION TO DISMISS-**          2

On May 1, 2005, SRIH entered into a contract with an independent sales representative in Washington.  The contract states that SRIH appoints Sea-Port Technical Sales, Inc. as "its exclusive agent to solicit business for and to sell the products of" SRIH.  The territory covered by the agreement consists of Idaho, Oregon, and Washington.  Sea-Port Technical Sales is to receive a commission on any sales.

**(1)  Previous Litigation**

Mr. Taylor and Mr. Petri were former employees of Plaintiff. In August 2002, the two men left their employment with Plaintiff to form another company, RAAD Technologies ("RAAD").  In November, 2002, Plaintiff sued Taylor, Petri, and RAAD in the United States District Court for the  Eastern District of Washington, alleging misappropriation of trade secrets; breaches of confidentiality, non-solicitation, and assignment of invention agreements; and violation of the common law duties of loyalty and confidentiality.  On June 20, 2003, the undersigned granted Plaintiff's motion for preliminary injunction, prohibiting Taylor, Petri, and RAAD from soliciting, contacting, or conducting business with Plaintiff's customers, delivering products or technology relating to hermetic electrical connectors to Plaintiff's customers, and requiring them to return all of Plaintiff's property, including customer lists and copies of designs and schematics. *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp.2d 1188, 1202-05 (E.D. Wash. 2003).  On October 10, 2003, the undersigned found Taylor, Petri, and RAAD to be in contempt for violating the preliminary injunction.  The undersigned also granted Plaintiff's motion for partial summary judgment for Taylor and Petri's breach of non-solicitation and confidentiality agreements.  On November, 2003, the court entered a Consent Decree, which restricted Taylor and Petri's future

**ORDER GRANTING**
**MOTION TO DISMISS-**          3

1  business activities, and required them to maintain the confidentiality of Plaintiff's

2  trade secrets and other confidential information regarding technology, processes,

3  and customers.  The decree also required Taylor and Petri to return all of Plaintiff's

4  information, materials, and records that were taken from Plaintiff.

5  Shortly after the entry of the Consent Decree, Taylor and Petri left RAAD

6  Technologies and began working for Defendant—Taylor as an employee and Petri

7  as a independent contractor.  On March 11, 2004, Plaintiff filed a motion for

8  temporary restraining order (TRO) which the undersigned granted on March 15,

9  2004.  The order directed that Taylor and Petri preserve evidence, and allowed

10  inspection of Taylor and Petri's new business premises and computers without

11  advance notice.

12  On March 18, 2004, Plaintiff attempted to execute the order and inspect the

13  warehouse where Taylor and Petri worked.  They refused to allow Plaintiff's

14  counsel or forensic computer expert to enter the premises, and Plaintiff sought

15  contempt sanctions.  In response to that motion, Taylor and Petri filed a Motion for

16  Protective Order that actually sought a protective order for the Defendant in this

17  case, SRI Hermetics.  The following representations were made in the defendant's

18  Memorandum of Authorities in Support of SRI Hermetics' Motion for Protective

19  Order:

20  (1)  that Taylor and Petri were both working on important and proprietary

21  aspects of anticipated patents in the "SRI Hermetics' Wenatchee

22  Office;"

23  (2)  that Plaintiff's attack on Taylor and Petri was an attempt to gain

24  access to SRI Hermetics' product design information and

25  manufacturing techniques;

26  (3)  Taylor was told by SRIH's Florida counsel to defy the court order and

27
28  **ORDER GRANTING**
**MOTION TO DISMISS-**        4

1    to keep SRIH's property safe from Plaintiff's agents.

2    (4)    the TRO was served at the office of SRI Hermetics;

3    (5)    the Wenatchee office of SRI Hermetics maintained highly confidential

4           and proprietary business information, including information regarding

5           potential patents;

6    (5)    customer documentation was present in the SRI Hermetics'

7           Wenatchee office, including drawings, specifications and test plans.

8    On April 22, 2004, the undersigned denied the motion for a protective order,

9    and on May 11, 2004, found Taylor and Petri to be in contempt.  Plaintiff was

10   awarded $125,000 in attorneys fees and costs.

11

12   **(2)  Present Litigation**

13   With regard to this current lawsuit, on February, 2004, Plaintiff sent a letter

14   to Defendant identifying products which Plaintiff was concerned could possibly

15   infringe valid patents owned by Plaintiff.  In the letter, Plaintiff requested that

16   Defendant either cease and desist from manufacturing, using, offering to sell, or

17   selling the identified products, or provide Plaintiff with a written explanation of

18   why the products do not infringe Plaintiff's patents.  On March, 8, 2004, Defendant

19   replied, requesting that Plaintiff provide Defendant its claim charts.  On March 15,

20   2005, Plaintiff responded , and denied it had a duty to provide Defendant with the

21   charts.  It appears that Plaintiff sent another letter on June 22, 2004, again asserting

22   infringement by Defendant of Plaintiff's patents.   In August, 2004, Defendant

23   responded and addressed Plaintiff's allegations.

24   On April 14, 2005, Plaintiff sent a letter to Defendant in which it expressed

25   concern that Defendant may have incorporated Plaintiff's patented technology in

26   its response to a Request for Quotation ("RFQ") from Northrop Grumman

27

28   **ORDER GRANTING**
     **MOTION TO DISMISS-**          5

1  Corporation.  Plaintiff requested a copy of Defendant's response.  Defendant

2  declined the request.

3

4                                  **DISCUSSION**

5          Federal Circuit law applies to Plaintiff's patent claims; thus, this Court must

6  apply Federal Circuit law to Defendant's motion to dismiss.  *See Electronics for*

7  *Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003).  Where a defendant

8  moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears

9  the burden of demonstrating that jurisdiction is appropriate.  *Id.* at 1349.  If the

10 district court does not hold an evidentiary hearing, a plaintiff need only make a

11 prima facie showing of jurisdiction to survive a motion to dismiss.  *Id*.  To make

12 such a showing, Plaintiff need only demonstrate facts that, if true, would support

13 jurisdiction over Defendant.  *Id.*  Unless directly contravened, Plaintiff's version of

14 the facts is taken as true, and conflicts between the facts contained in declarations

15 submitted by the two sides must be resolved in Plaintiff's favor for purposes of

16 deciding whether a prima facie case for personal jurisdiction exists.  *Id.*  At this

17 stage in the proceedings, then, the Court need not decide whether Plaintiff has

18 proven its contentions, but only whether it has made a prima facie case for personal

19 jurisdiction.  *Id.*  A "prima facie" showing means that the Plaintiff has produced

20 admissible evidence, which if believed, is sufficient to establish the existence of

21 personal jurisdiction.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.

22 1995).  Uncontroverted "well-pled" allegations in a complaint are deemed true for

23 the purpose of determining whether a prima facie showing of personal jurisdiction

24 has been made.  *Id*.

25         In its complaint, Plaintiff alleges that "[t]he Court has personal jurisdiction

26 over [Defendant] because [Defendant] had an office in this district and conducted

27

28 **ORDER GRANTING**
   **MOTION TO DISMISS-**                    6

business here, including the design of products sold and/or offered for sale that are covered by patents owned by [Plaintiff]."

Defendant is not a resident of Washington, and it was not served with process while present in this state.[1]  Thus, the only way for this Court to exercise jurisdiction over Defendants is for Plaintiff to establish either general jurisdiction, or specific jurisdiction.

**(1) General Jurisdiction**

Under the theory of general jurisdiction, a defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868 (1984); *Electronics for Imaging, Inc.*, 340 F.3d at 1349.  There is not a specific test to follow when determining whether a defendant's activities within a state are 'continuous and systematic.'  Instead, this court must look at the facts of each case to make the determination.  *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952).

The threshold for satisfying the requirements for general jurisdiction is substantially greater than that for specific jurisdiction.  *See* 16 James Wm. Moore et al., Moore's Federal Practice § 108.40 (3d ed.1997) (*citing Helicopteros*, 466 U.S. at 414-15).  Typically, courts assert general jurisdiction only over nonresidents who are essentially domiciled within the forum state. *See id.* at § 108.41[3] ("The threshold for 'continuous and systematic' contact usually requires

---

[1]It appears Defendant was served in Florida by personal delivery of a copy of the summons and complaint to Bonnie Greenwalt, Executive Secretary of SRI Hermetics.  (Ct. Rec. 3)

**ORDER GRANTING**
**MOTION TO DISMISS-**              7

1   at least an office in the forum state.").

2       Plaintiff argues that Defendant's contacts with the state of Washington are

3   continuous and systematic.  Plaintiff relies on the following instances of

4   Defendant's contacts:

5       (1)   Defendant hired employees who were Washington residents;

6       (2)   Defendant maintained an office in Wenatchee, in which its employees

7   worked on several significant development projects for Defendant;

8       (3)   Defendant owned a significant amount of property in Wenatchee.

9       It is clear that at the time the present lawsuit was filed, Defendant did not

10  have an office, facilities, bank accounts, real estate, telephone number or postal

11  address in Washington.  The complaint does not specify when the alleged

12  infringing actions took place.  In its complaint, Plaintiff asserts that Defendant

13  offered to sell products to Plaintiff's existing customers  that are covered by one or

14  more of Plaintiff's patents.  Plaintiff does not identify the patent, nor does Plaintiff

15  identify when or how Defendant offered to sell the product.   In their response to

16  the motion to dismiss, Plaintiff provides letters that it had written to Defendant

17  regarding the alleged patent infringement.  Plaintiff addressed a letter to Jim

18  Twombly with an address of Melbourne, Florida.  The reply letter was written by

19  Defendant's counsel, who are located in Orlando, Florida.

20      In its complaint, Plaintiff alleges Defendant had an office in Wenatchee, and

21  conducted business in Wenatchee.  In doing so, Plaintiff appears to acknowledge

22  that Defendant no longer has an office in Wenatchee and no longer conducts

23  business there.

24      Defendant argues its presence in Wenatchee was happenstance and

25  temporary.  It says it directed all business activity from Florida, where the

26  corporation was and remains located.   It says certain equipment was temporarily

27  **ORDER GRANTING**

28  **MOTION TO DISMISS-**        8

located in Wenatchee and that employees were temporarily hired at that location until the planned relocation to Florida became feasible.

It appears to the court that the only conceivable support for general jurisdiction would be the claim that work on the infringing products or work on the RFQ for Nothrup Grumman Corp. must have been conducted, or completed while the two former employees (Taylor and Petri) were located in Wentachee, based on their representations to the Court in the earlier litigation, and because the two former employees had access to information that would allow them to create an infringing product.  This argument, however, is not supported by any evidence.

The court finds Plaintiff has not met its burden of establishing that this Court can exercise general jurisdiction over the Defendant.  Plaintiff has not made a "prima facie" showing that Defendant conducted continuous and systematic business activities in Washington, either at the time the infringement claims arose (whenever that may have been) or when the Plaintiff's complaint was filed (May 2005).

### (2) Specific Jurisdiction

Specific jurisdiction is based on minimum contacts with the state and is limited to causes of actions that "arise out of" or are "related to" the contacts, even if those contacts are "isolated and sporadic."  *LSI Industries Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

Determining whether specific jurisdiction exists over a non-resident defendant involves two inquiries: (1) whether a forum state's long-arm statute permits the assertion of jurisdiction and (2) whether assertion of personal jurisdiction violates federal due process.  *Trintec Indust., Inc. v. Pedre Promotional Products, Inc.,* 395 F.3d 1275, 1282 (Fed. Cir. 2003).  It is well-established that

**ORDER GRANTING MOTION TO DISMISS-**            9

Washington state's long-arm statute comports to the full extent of the due process clause of the United States Constitution.[2] *Easter v. American West Financial*, 381 F.3d 948, 960 (9th Cir. 2004). Thus, the two-prong analysis set forth in *Trintec* collapses into a due process analysis. *Trintec*, 395 F.3d at 1279.

In determining whether due process allows the court to exercise jurisdiction over a non-resident, the court must examine whether Defendant has established "minimum contacts" with Washington, "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358-59 (Fed. Cir. 1998). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Red Wing*, 148 F.3d at 1359. In sum, due process is satisfied if: (1) the defendant purposefully directed its

---

[2]Wash. Rev. Code § 4.28.185 provides in part:

(1)    Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

      (a)    The transaction of any business within this state;
      (b)    The commission of a tortious act within this state;
      (c)    The ownership, use, or possession of any property whether real or personal situated in this state;

(3)    Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

**ORDER GRANTING**
**MOTION TO DISMISS-**          10

activities at residents of the forum state; (2) the claim arises out of or relates to the defendant's activities within the forums state; and (3) the assertion of personal jurisdiction is reasonable and fair. *Electronics for Imaging, Inc.*, 340 F.3d at 1350.

Once the plaintiff has shown there are sufficient minimum contacts to satisfy due process, the defendant bears the burden to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Electronics for Imaging, Inc.*, 340 F.3d at 1351-52. Reasonableness considerations include: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 1352.

### (a) **"Purposefully Directed"**

Plaintiff asserts that Defendant offered to sell its product in the State of Washington, which establishes purposeful availment. Plaintiff relies on the fact that Defendant entered into a contract with Sea-Port to solicit business for and to sell the Defendant's products. According to the contract, Defendant will provide Sea-Port, its exclusive agent and a Washington resident, with "literature, catalogs, technical data, test results, prices, [and] service manuals, to help Sea-Port develop a market for Defendant's products in Washington." Defendant also has a website in which it identifies Sea-Port as its Northwest U.S. representative. The website has a screen where interested customers can fill out a form which includes the company name and the project description, including performance parameters. Defendant instructs the customer that "by filling in this form and sending it to us, we can start collaborating on your needs."

**ORDER GRANTING**
**MOTION TO DISMISS-**            11

Also, Plaintiff asserts that Defendant has offered to sell its product to a Washington resident. In May, 2005, it appears that a representative from Sea-Port contacted Defendant and notified it that Honeywell was interested in a hermetic enclosure and connector for an avionics requirement.  It appears that the Honeywell office is located in Redmond, Washington.

Defendant asserts that it did not direct any activities to Washington residents, except temporarily occupying a building, hiring two employees (Taylor and Petri), and completing a small welding project.  Defendant characterizes its contract with Sea-port as "non-exclusive" and explains:

> The description of Sea-Port as exclusive or nonexclusive is somewhat confusing.  Sea-Port is [Defendant's] only sales representative in Washington . . . However, Sea-Port represents many manufacturers other than [Defendant], and it is thus a nonexclusive sales representative.

There is little doubt that Defendant is making a conscious effort to create a market in Washington.  It is not hiding out in Florida and it appears to have every intention of wooing Washington customers.  Otherwise, it would not be necessary for Defendant to have a sales representative in this state.

On the other hand, Defendant has also provided an affidavit of its Marketing Director in which he states that he was in contact with his Sea-Port sales representative, but as of August, 2005, there has been no response from Honeywell and there presently are no ongoing negotiations with Honeywell.

Case law is instructive on this issue.  A nonresident is subject to specific personal jurisdiction in a patent infringement action in a local court if it can be shown that it deliberately placed the infringing product into the "stream of commerce" with the expectation of exploiting business in the forum state. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) ("plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction

**ORDER GRANTING**
**MOTION TO DISMISS-**          12

consonant with due process: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there").  Regardless of the quantity of products sold or the shipping method used, the sale of patented products to buyers in the forum state creates specific personal jurisdiction over an out-of-state seller.  *North Am. Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579-80 (Fed. Cir. 1994).  Here, however, Plaintiff is not asserting that Defendant actually sold an allegedly infringing product to a resident of the State of Washington.  Instead, Plaintiff asserts that Defendant offered to sell a product.

The Court may exercise specific jurisdiction over Defendant if it offered to sell the allegedly infringing product in Washington state.  *See 3 D Sys. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1378-79 (Fed. Cir. 1998).  Offers to sell may be formal or they may consist of "generating interest in a potential infringing product to the commercial detriment of the rightful patentee."  *Id.* at 1379 (finding that price quotes were offers to sell despite disclaimers).  Mere advertisements directed to a national audience are not "offers to sell" within a particular forum.  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997).

Even though Defendant maintains a website, this is not enough to exercise specific jurisdiction over Defendant. The Federal Circuit recently reviewed this issue in *Trintec*.  In that case, the Federal Circuit examined prior case law and found that some cases suggested that the availability and use of highly interactive, transaction-oriented website, as opposed to an essentially passive website[3] by itself

_____

[3]A passive site has been described as a site that merely advertises on the Internet.  *See Mieczkowski v. Masco Corp.*, 997 F.Supp. 782, 786 (E.D. Tex. 1998).

**ORDER GRANTING
MOTION TO DISMISS-**          13

1   could support specific jurisdiction wherever the site is available to potential
2   customers. *Id.* (citations omitted).  It also found that other cases have indicated
3   that something additional beyond a website is required to establish personal
4   jurisdiction. *Id.*

5       In this case, Defendant's website is not a highly interactive, transaction-
6   oriented website.  There is no pricing information on the website.  There is no
7   manner or method to order products on the web.  It appears to be a fairly passive
8   informational website that allows interested customers to contact the company.
9   Thus, the website alone is not enough to establish specific personal jurisdiction.

10      The critical issue is whether the presence of an exclusive sales representative
11  is enough to establish personal jurisdiction over Defendant.  The fact that the sales
12  representative has not been able to generate any business for Defendant in
13  Washington mitigates against the Court finding it should exercise specific
14  jurisdiction over Defendant.

15

16          (b) **"Arises out of or relates to"**

17      Plaintiff asserts its claims arise out of the products Defendant has
18  made–many of which were designed in part by Mr. Taylor and Mr. Petri in
19  Defendant's Wenatchee Office–and offered to sell to Washington residents.

20      Defendant argues that it has not sold any products in or from Washington
21  and that all sales to date have been in Florida.  Defendant asserts that it has not
22  engaged in any of the alleged activities in Washington.

23      There is no evidence that the Defendant's response to Northrup Grumman
24  Corporation's request for quotation, which is the alleged infringing conduct, was
25  generated from the Washington office.  Also, there is no evidence that Defendant
26  has sold any products, let alone infringing products, to anyone in Washington.

27
28  **ORDER GRANTING**
    **MOTION TO DISMISS-**          14

1  There is no evidence that the projects that Taylor and Petri worked on in

2  Wentachee ever resulted in a salable product, other than Defendant's

3  representations at the prior proceeding that there was information regarding

4  products whose patents were pending, or at least were almost pending.

5      Plaintiff has not met its burden of showing that the alleged infringing sales

6  or offers to sell arose out of  or relate to Defendant's activities in Washington.

7  Hence, it cannot be said that Plaintiff's cause of action arose out of the transaction

8  of any business within the State of Washington, the commission of a tortious act

9  within this state, and/or the ownership, use, or possession of any property situated

10 in this state.

11     Plaintiff has not made a "prima facie" showing  that Defendant either

12 purposefully directed its activities at Washington residents or that Plaintiff's

13 infringement claim arises out of or relates to the Defendant's activities in

14 Washington.  In other words, Plaintiff has not established that Defendant has

15 sufficient "minimum contacts" with the State of Washington such that it would

16 comport with due process for this court to exercise specific personal jurisdiction

17 over the Defendant.  As such, the burden does not shift to the Defendant to show it

18 would otherwise be unreasonable for this court to exercise specific personal

19 jurisdiction over the Defendant.

20

21                              **CONCLUSION**

22     This court concludes it has neither general or specific jurisdiction over the

23 Defendant.  Accordingly, Defendant's Motion To Dismiss For Lack Of Personal

24 Jurisdiction (Ct. Rec. 4) is **GRANTED** and this action is **DISMISSED** without

25 prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

26 ///

27 **ORDER GRANTING**

28 **MOTION TO DISMISS-**          15

1    **IT IS SO ORDERED**.  The District Executive is directed to enter this order,

2    forward copies to counsel, and close this file.

3    **DATED** this 4th of November, 2005.

4

5    ___s/ Alan A. McDonald_____

6    ALAN A. McDONALD
     Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    **ORDER GRANTING**

28    **MOTION TO DISMISS-**           16